UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALISSA H.,

                Plaintiff,                        **DECISION AND ORDER**

       v.

                               6:23-CV-06064 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____


## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Alissa H. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 7), and Plaintiff's reply (Dkt. 8). For the reasons discussed below, Plaintiff's motion (Dkt. 6) is denied and the Commissioner's motion (Dkt. 7) is granted.

**BACKGROUND**

Plaintiff protectively filed her application for SSI on March 24, 2017. (Dkt. 5 at 149-54).[1] In her application, Plaintiff alleged disability beginning February 1, 2017. (*Id.* at 149; 5-1 at 298). Plaintiff's application was initially denied on September 6, 2017. (*Id.* at 88). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") B. Hannan on January 7, 2019. (*Id.* at 36-73). On May 6, 2019, the ALJ issued an unfavorable decision. (*Id.* at 20-31). Plaintiff requested Appeals Council review; her request was denied on April 30, 2020, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-11). Plaintiff appealed to the United States District Court for the Western District of New York. The matter was remanded by former United States Magistrate Judge William Carter for further administrative proceedings. (Dkt. 5-1 at 388-400).

A second hearing was held before the same ALJ on September 12, 2022. (*Id.* at 298). An unfavorable decision was issued on September 28, 2022. (*Id.* at 298-313). This action followed.

**LEGAL STANDARD**

I.    **District Court Review**

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work

activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

**DISCUSSION**

**I.     The ALJ's Decision**

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since March 24, 2017, the application date.  (Dkt. 5-1 at 300).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: bipolar disorder, personality disorder, anxiety disorder, carpal tunnel syndrome, and asthma.  (*Id.*).  The ALJ further found that Plaintiff's back impairment and obesity were non-severe.  (*Id*. at 300-01).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*. at 301).  The ALJ particularly considered the criteria of Listings 3.03, 12.04, and 12.06 in reaching her conclusion.  (*Id.* at 301-04).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the following additional nonexertional limitations:

> she can have occasional exposure to humidity, wetness, dust, odors, fumes, and pulmonary irritants; she can never have any exposure to extreme cold or extreme heat; she is able to perform simple, routine, and repetitive tasks but not at a production rate or pace (e.g. assembly line work); she is limited to perform simple work-related decisions; she is limited to tolerating a few changes in a routine work setting defined as performing the same duties at the same station or location day-to-day; she can have occasional interaction with supervisors; she can have occasional contact with coworkers with no tandem tasks or team type activities; she can have no contact with the public; and she is limited to frequent bilateral handling, fingering, and feeling.

(*Id.* at 304).  At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id.* at 311).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of floor cleaner, industrial cleaner, and general laborer plastics products at the medium level; inspector and hand packager, price marker, and routing clerk at the light level; and document preparer, electronics inspector, and final assembler at the sedentary level.  (*Id.* at 312).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 313).

## II.   The ALJ's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to vacate the ALJ's decision and remand this matter to the Commissioner, arguing that the ALJ failed to comply with Judge Carter's July 7, 2021 order and the January 7, 2022 Appeals Council order remanding the case back to the Commissioner.  The Court is not persuaded by these arguments, for the reasons discussed below.

Judge Carter remanded this matter "for a proper assessment of opinion provided by Dr. Chlebowski and LMHC Bellucco," noting that "[d]ue to the errors in weighing the providers' opinion, the ALJ will also need to make new findings related to what other work Plaintiff retains the ability to perform in the national economy."  (Dkt. 5-1 at 400).  Among the errors identified by Judge Carter included the ALJ's failure to provide an explicit

discussion of the providers' status as treating sources, and the ALJ's reliance on "a selective reading of the record regarding Plaintiff's activities of daily living, objective observations, and non-compliance with treatment to support her weight determination and ultimate social limitations in the RFC." (*Id.* at 397). As a result, the Appeals Council remanded the case to the ALJ "for further proceedings consistent with the order of the court." (*Id.* at 405). This Court concludes that the ALJ complied with those directives.

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [her] decision." *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted)). In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute [her] own judgment for competent medical opinion. This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citations omitted).

Similarly, the ALJ may not "cherry pick" evidence. *Lee G. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1558(DJS), 2021 WL 22612, at *5 (N.D.N.Y. Jan. 4, 2021) ("Cherry picking refers to improperly crediting evidence that supports findings while ignoring conflicting evidence from the same source." (quotation and citation omitted)); *Starzynski v. Colvin*,

- 7 -

No. 1:15-cv-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) ("It is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant.") (citing *Trumpower v. Colvin*, No. 6:13-cv-6661 (MAT), 2015 WL 162991, at *16 (W.D.N.Y. Jan. 13, 2015)). "Cherry picking can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both." *Younes v. Colvin*, No. 1:14-CV-170(DNH/ESH), 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) (quotation and citation omitted).

In assessing a disability claim, an ALJ must consider and weigh the various medical opinions of record. Pursuant to the Commissioner's regulations:

> the ALJ must consider various factors in deciding how much weight to give to any medical opinion in the record, regardless of its source, including: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the . . . physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.

*Pike v. Colvin*, No. 14-CV-159-JTC, 2015 WL 1280484, at *5 (W.D.N.Y. Mar. 20, 2015) (quotation, citation, and alterations omitted).

Because Plaintiff's claim was filed before March 27, 2017, the ALJ was required to apply the treating physician rule, under which a treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 416.927(c)(2). Under the treating physician rule, if the ALJ declines to afford controlling weight to a treating physician's medical opinion, he or she

- 8 -

"must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). If the ALJ neglects to expressly apply the requisite factors, it is considered a "procedural error." *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (quotation omitted). However, such error is harmless if "a searching review of the record" confirms "that the substance of the treating physician rule was not traversed." *Id.* (quotations omitted).

Whatever weight the ALJ assigns to the treating physician's opinion, he must "give good reasons in [his] notice of determination or decision for the weight [he gives to the] treating source's medical opinion." 20 C.F.R. § 416.927(c)(2); *see also Harris v. Colvin*, 149 F. Supp. 3d 435, 441 (W.D.N.Y. 2016) ("A corollary to the treating physician rule is the so-called 'good reasons rule,' which is based on the regulations specifying that the Commissioner will always give good reasons for the weight given to a treating source opinion. . . . Those good reasons must be supported by the evidence in the case record, and must be sufficiently specific. . . ." (quotation, citations, and internal quotation marks omitted)).

"Unlike a treating source, a 'nontreating source' is defined as a 'physician, psychologist, or other acceptable medical source who has examined [the plaintiff] but does not have, or did not have, an ongoing treatment relationship with [the plaintiff].'" *Cardoza v. Comm'r of Soc. Sec.*, 353 F. Supp. 3d 267, 283 (S.D.N.Y. 2019) (quoting *Calixte v. Colvin*, 14-CV-5654 (MKB), 2016 WL 1306533, at *24 (E.D.N.Y. Mar. 31, 2016)). "The ALJ is required to articulate consideration of the same factors for evaluating opinions from non-treating medical sources as those for assessing treating sources; the only exception in

which the ALJ is 'not required to articulate how [he or she] considered evidence' is from nonmedical sources." *Erin B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-248 (CFH), 2022 WL 2355429, at \*8 (N.D.N.Y. June 30, 2022) (quotation and citation omitted); *Brittani P. v. Comm'r of Soc. Sec.*, No. 1:20-CV-775 (JLS), 2022 WL 1645811, at \*3 (W.D.N.Y. May 24, 2022) ("For medical opinions of consultants or non-treating sources, 20 C.F.R. § 416.927(c)(3) provides that 'because non[-]examining sources have no examining or treating relationship with [the claimant], the weight [the ALJ] will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions.'" (quoting *Messina v. Comm'r of Soc. Sec. Admin.*, 747 F. App'x 11, 16 n.4 (2d Cir. 2018))).

Finally, for mental health impairments—which are at issue in this case—the opinions offered by treating providers are "all the more important," given those impairments are "not susceptible to clear records such as x-rays or MRIs," and "depend almost exclusively on less discretely measurable factors, like what the patient says in consultations." *Flynn v. Comm'r of Soc. Sec.*, 729 F. App'x 119, 122 (2d Cir. 2018); *see also Olejniczak v. Colvin*, 180 F. Supp. 3d 224, 228 (W.D.N.Y. 2016) (explaining that "the treating physician rule is even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time" (quotations and citation omitted)).

As noted, Plaintiff challenges the ALJ's assessment of the joint opinion provided by LMHC Stephanie Bellucco, Sudha Bakshi, M.D., and Susan Chlebowski, M.D., issued on November 20, 2018.  (Dkt. 5 at 473-77).

The mental RFC questionnaire prepared jointly by these providers reflects Plaintiff's diagnoses of bipolar disorder and personality disorder.  (*Id.* at 473).  The providers noted that Plaintiff previously attended Rochester Rehabilitation between February and August of 2016, and again beginning June 28, 2018, through the date of the opinion.  (*Id.*).  They indicated that since returning for treatment in 2018, Plaintiff had attended six appointments.  (*Id.*).  Plaintiff was prescribed medication the day before the questionnaire was prepared so no information regarding side effects was available.  (*Id.*).  The opinion describes Plaintiff as well-groomed with a normal gait and clear but rapid speech.  (*Id.*).  She has anxious mood, intact memory, poor judgment, and limited insight.  (*Id.*).

In a check box section of the form, the providers opined that Plaintiff was unable to meet competitive standards in maintaining regular attendance and punctuality, working in coordination with others, and completing a normal workday without interruption.  (*Id.* at 475).  They identified serious limitations in her ability to sustain an ordinary routine without special supervision, perform at a constant pace without an unreasonable number of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, and deal with normal work stress.  (*Id.*).  They opined that Plaintiff is "unable to consistently attend work due to sleep

disturbances, heightened anxiety, and restrictions related to transportation/child

care/interpersonal relationship conflict and impulsive/damaging behaviors related to

emotional reactivity and irritability." (*Id.*).   These providers further found Plaintiff

seriously limited in the ability to set realistic goals or make plans independently of others,

deal with the stress of semiskilled and skilled work, interact appropriately with the general

public, and use public transportation. (*Id.* at 476).  They opined that she is unable to meet

competitive standards to maintain socially appropriate behavior and would be absent more

than four days per month as a result of her impairments. (*Id.* at 476-77).   They concluded

that she could not engage in full-time competitive employment on a sustained basis. (*Id.*

at 477).  Attached to the opinion were several pages of treatment notes. (*Id.* at 480-88).

The ALJ explained her assessment of the opinion and the attached treatment notes

as follows:

> As part of the exhibit, there were treatment notes attached to this
> questionnaire.  In July 2018, Ms. Bellucco (who is not an acceptable medical
> source; see below) noted that [Plaintiff] had appropriate attire, cooperative
> behavior, good eye contact, rapid speech, and racing thoughts.  [Plaintiff]
> denied hallucinations, had fair insight, and fair judgment.  [Plaintiff] had
> normal orientation, depressed mood, but no suicidal or homicidal ideation
> (Exhibit 13F/18).   During another examination in November 2018, Dr.
> Chlebowski indicated that [Plaintiff] had good attention, good concentration,
> anxious mood, rapid speech, and appropriate appearance (Exhibit 13F/12).
> Of note, in 2016, Dr. Bakshi noted that [Plaintiff] had good judgment, normal
> associations,    no    evidence    of    hallucinations,    and    good
> attention/concentration.   [Plaintiff] had clear speech, focused thought
> process, and was tearful, "but appropriate" (Exhibit 13F/15-16).
>
> Their treatment notes showed that [Plaintiff] had mixed findings.  But, it does
> not support the level of severity they opined to.  And, as noted above, in the
> CE, [Plaintiff] had fair hygiene, fluent speech, rapid speech, goal directed
> thought process, flat affect, neutral mood, normal orientation, and intact
> memory.   [Plaintiff] recalled three out of three objects immediately.
> [Plaintiff] recalled two out of three objects on delay.  [Plaintiff] recited four

digits forward and backward.  [Plaintiff] had good insight, and fair judgment (Exhibit 7F).  The rest of the objective medical evidence noted that [Plaintiff] has had either fair or good attention/concentration.  [Plaintiff's] insight and judgment have been fair, good, or "improving" (Exhibits 3F/5, 5F/4, 15, 17, and 32, and 12F/2).  Although [Plaintiff] was found to be disheveled at one examination, [Plaintiff] also had "improving" insight and judgment (Exhibit 18F/13).  And, [Plaintiff] told her provider that her mood swings were under better control when she was compliant with her medication regimen (Exhibit 12F/4).  During another examination, [Plaintiff] was well groomed with rapid speech, good memory, good attention, and fair judgment (Exhibit 12F/17).  Therefore, the objective medical evidence shows that [Plaintiff] had mixed findings, but she was not as limited as opined to by Ms. Bellucco, Dr. Chlebowski, and Dr. Bakshi.  While the record shows that [Plaintiff] was in mental health treatment from 2009, through 2011, this predates the alleged period under review and was before [Plaintiff] turned 18 years of age.  [Plaintiff] alleged an onset date of February 1, 2017, which significantly predates the mental health treatment she received from 2009 through 2011 (See exhibits 14F and 15F).

Also, Dr. Chlebowski only treated [Plaintiff] once for her mental health impairments.  This occurred, as noted above, in November 2018.  There are no other treatment records in the objective medical evidence from Dr. Chlebowski.  Therefore, she only completed a one-time examination of [Plaintiff], in which she noted that [Plaintiff] had good attention, and good concentration with rapid speech, and anxious mood (Exhibits 12F/15 and 18, and 13F/12).  There is very limited support for her opinion as she does not [have] a history with [Plaintiff] and has not provided ongoing care.  In terms of Dr. Bakshi, she treated [Plaintiff] in 2016 as noted in exhibit 13F/15-16.  She generally noted [Plaintiff] had mostly normal or good mental health examination findings.  And, exhibit 3F/2 shows that Dr. Bakshi had three appointments scheduled with [Plaintiff] in June and July of 2016.  But, [Plaintiff] was a "n/s" (no-show) at these appointments (Exhibit 3F/2).  Therefore, there is very limited support for her opinion about [Plaintiff], considering that her one-time examination showed mostly normal findings.

As for Ms. Bellucco, as a L.M.H.C., although she treated [Plaintiff] more frequently than Dr. Chlebowski and Dr. Bakshi (See exhibits 3F and 12F), she is not an acceptable medical source.  Also, as noted above, [Plaintiff] has had mixed findings in the objective medical evidence.  But these findings show that [Plaintiff] was not as limited as stated in exhibit 13F (See exhibits 3F/5, 5F/4, 15, 17, and 32, 12F/2, 4 and 17, and 18F/13).  Furthermore, as noted above, [Plaintiff] has not been consistent with her medication regimen.  [Plaintiff] has also missed appointments despite her allegations that she has significant mental health limitations (See exhibits 3F/2 and 12F/4).

(Dkt. 5-1 at 308-09).

Plaintiff contends that although the ALJ's decision does now address the treating relationship between Plaintiff and these providers, the explanation provided remains insufficient. The Court disagrees.

As is evident, the ALJ's explanation for giving little weight to this opinion was detailed. The ALJ appropriately considered the limited relationship between Plaintiff and these providers in deciding how much weight to assign the opinion. *See Hemmer v. Comm'r of Soc. Sec.*, No. 6:18-CV-06804 EAW, 2020 WL 13557913, at *6 (W.D.N.Y. Feb. 7, 2020) ("The ALJ properly concluded that MHC Bellinger's opinion was entitled to less weight due to her limited, short treating relationship with Plaintiff."). That these providers only collectively saw Plaintiff for a total of six visits following her onset date was a relevant factor for the ALJ to consider in weighing their opinions as to Plaintiff's mental health limitations, as was the fact that the only one of the three providers to see her more than one time was not an acceptable medical source.

In addition, the ALJ appropriately identified information contained in the treatment records that did not fully support the limitations identified therein, including those indicating that Plaintiff was well groomed with rapid speech, good memory, good attention, good concentration, and fair judgment. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (holding that ALJ may reject portions of a medical opinion that are inconsistent with the evidence of record); *Karla L. v. Comm'r of Soc. Sec.*, 516 F. Supp. 3d 293, 300 (W.D.N.Y. 2021) ("Here, the ALJ was within her discretion to conclude that Dr. Chadha's opinion was inconsistent with the evidence of record, including her own treatment records,

and to thus decline to afford it controlling weight.").  It was also appropriate for the ALJ to consider Plaintiff's report that her mood swings were under better control when she was compliant with a medication regimen, as well as the fact that she had missed scheduled appointments.  *Jeffrey R. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00709-EAW, 2023 WL 2581539, at *5 (W.D.N.Y. Mar. 21, 2023) ("Because 'the regulations explicitly state that treatment and methods used to alleviate symptoms, and how symptoms affect patterns of daily living, are relevant to the ALJ's assessment,' the ALJ here properly considered the impact of Plaintiff's medication intake on his symptoms." (quoting *Snyder v. Comm'r of Soc. Sec.*, No. 22-277-cv, 2023 WL 1943108 (2d Cir. Feb. 13, 2023))).

Plaintiff argues that the ALJ should have explained in more detail the reasons behind Plaintiff's struggles with verbal aggression, maintaining appointments, and compliance with treatment, and that the failure to do so is evidence that the ALJ did not properly apply the treating physician rule.  But Plaintiff overstates the ALJ's obligations.  To be sure, an ALJ must assess an opinion's consistency with the record as a whole.  *See Halloran*, 362 F.3d at 32 ("Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record. . . ."); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) ("[T]he less consistent [a treating physician's] opinion is with the record as a whole, the less weight it will be given.").  But that obligation does not extend to a requirement that the ALJ discuss every single piece of evidence in the record.  *Seth M. D. v. Cmm'r of Soc. Sec.* No. 1:21-CV-01116 (JJM), 2024 WL 1130381, at *6 (W.D.N.Y.

Mar. 15, 2024) ("Although the ALJ did not discuss the treatment findings of each treatment note, or itemize every potentially 'negative' finding, it is apparent from the decision that the ALJ considered the treatment notes, as well as the negative findings."); *Arch v. Comm'r of Soc. Sec.*, No. 22-CV-8826 (VF), 2024 WL 964600, at *10 (S.D.N.Y. Mar. 6, 2024) ("But the ALJ is not 'required to mention or discuss every single piece of evidence in the record.'" (quoting *Zabala v. Astrue*, No. 05-CV-4483 (WHP), 2008 WL 136356, at *4 (S.D.N.Y. Jan. 14, 2008))). Rather, the Court just must be able to follow the ALJ's reasoning in a manner to sufficiently understand the basis for the opinion. *See Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("An ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits us to glean the rationale of an ALJ's decision[.]" (quotation and citation omitted)). Here, the ALJ's decision meets this standard.

The ALJ acknowledged multiple times that Plaintiff's treatment records contained mixed findings. But not addressing each one explicitly does not suggest that the information was overlooked or that the ALJ cherry-picked only those portions of the evidence that supported the disability determination. And her decision, which must be read as a whole, did address the reasons given by Plaintiff for her noncompliance and outlined the ALJ's reasoning for not fully crediting Plaintiff's testimony:

> Despite [Plaintiff's] allegations, she testified that she is not currently receiving any mental health treatment. She is not taking any medication for her mental health. [Plaintiff] testified that in dealing with her older child's health issue, it has affected her ability to get into mental health treatment. But, she also testified that she uses Uber. And, as noted in exhibit 19F, [Plaintiff] has seen her other providers for her carpal tunnel syndrome. [Plaintiff] has not had any noted hospitalizations for her mental health or her asthma during the period under review. [Plaintiff] testified that she can read

the label of her child's liquid medication and administer it without any problem. Even though she told her provider that she functions better while taking her medication (controlling her moods exhibit 12F/4), [Plaintiff] has not taken any medication for a year. In that time, she has been able to care for her children, read labels on medication, can use utensils to eat, make meals for her children, and has a good relationship with her mother. [Plaintiff's] testimony, coupled with the findings from the objective medical evidence, supports that [Plaintiff] is not as limited as alleged. In giving [Plaintiff] the benefit of the doubt, the undersigned addressed her impairments in the residual functional capacity by limiting [Plaintiff] to frequent handling, feeling, and fingering, and limited exposure to work environments, which would exacerbate her breathing. And, the undersigned limited [Plaintiff] to simple tasks, simple decisions, no production standards, and limited contact with others. No single factor mentioned is conclusive on the issue to be determined, but when viewed in combination, and in conjunction with the medical history and examination findings, they suggest that [Plaintiff] is not as limited as is alleged. For all the foregoing reasons, the undersigned concludes that [Plaintiff] has been able to perform a range of work consistent with the residual functional capacity as assessed.

(Dkt. 5-1 at 311).

Plaintiff's arguments essentially amount to an invitation for the Court to reweigh the evidence, but it is the ALJ's duty to resolve conflicts among evidence in the record. *See Smith v. Berryhill*, 740 F. App'x 721, 725 (2d Cir. 2018) ("The ALJ could have reached a different conclusion on the disputed medical record, but we defer to the ALJ's disability determination when it is supported by substantial evidence."); *Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012) (explaining that "because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent"); *Bryan F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0055-DB, 2021 WL 1737760, at *5 (W.D.N.Y. May 3, 2021)

("[I]t is within the ALJ's discretion to resolve genuine conflicts in the evidence.  In so doing, the ALJ may 'choose between properly submitted medical opinions.'" (quotation omitted)).  Therefore, to the extent that there was conflicting evidence in the record, the ALJ was entitled to resolve such discrepancies.

In sum, the Court finds no reversible error in its review of the ALJ's decision.  The ALJ properly evaluated the medical opinion evidence pursuant to the treating physician rule, and her reasons for not adopting the entirety of the opinion at issue is supported by substantial evidence in the record, as is the assessed mental RFC.  For those reasons, remand is not required on this basis and there is no basis to disturb the ALJ's conclusions.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 7) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  March 25, 2024
          Rochester, New York